**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:18-cv-00315-MR**

| | |
|---|---|
| MC1 HEALTHCARE LLC, d/b/a MOUNTAINSIDE,       ) <br> ) <br> ) <br>       **Plaintiff,**     ) <br> ) <br>       **vs.**     ) <br> ) <br> MOUNTAINSIDE SOLUTIONS, INC. ) <br> n/k/a MOUNTAINVIEW ) <br> RECOVERY, INC., and MICHAEL E. ) <br> ELKINS, ) <br> ) <br>       **Defendants.** ) <br> _____ ) <br> )<br> MOUNTAINSIDE SOLUTIONS, INC. ) <br> n/k/a MOUNTAINVIEW ) <br> RECOVERY, INC., ) <br> ) <br>       **Counterclaim-Plaintiff,** ) <br> ) <br>       **vs.** ) <br> ) <br> MC1 HEALTHCARE LLC, d/b/a ) <br> MOUNTAINSIDE, ) <br> ) <br>       **Counterclaim-Defendant.** ) <br> _____ ) | <u>**MEMORANDUM OF DECISION AND ORDER**</u> |

**THIS MATTER** is before the Court on Defendant Michael Elkins' Motion to Dismiss [Doc. 64] and the Plaintiff MC1's Motion to Dismiss Defendant Mountainview's Counterclaims [Doc. 70].

# I. PROCEDURAL BACKGROUND

On August 1, 2018, the Plaintiff MC1 Healthcare LLC, doing business as Mountainside ("MC1" or the "Plaintiff"), filed a complaint (the "Original Complaint") in the United States District Court for the Southern District of New York against Mountainside Solutions, Inc., now known as Mountainview Recovery, Inc., ("Defendant Mountainview" or "Mountainview") and Michael Elkins ("Defendant Elkins" and collectively "Defendants"), alleging trademark infringement, cybersquatting, unfair competition, and unfair and deceptive trade practices. [Doc. 1].[1] On October 25, 2018, the United States District Court for the Southern District of New York issued an Order transferring the case to this Court, and the case was transferred to this Court on November 11, 2018. [Doc. 37].

On November 15, 2018, Defendant Mountainview filed an answer to the Original Complaint and counterclaims against MC1 seeking the cancellation of MC1's trademark registration. [Doc. 46]. On the same day, Defendant Elkins filed a motion to dismiss the claims in the Original Complaint against him pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). [Doc. 47].

---

[1] The Complaint was refiled on August 2, 2018, due to various deficiencies in the initial filing. [See Docket Entries dated August 2, 2018].

On December 21, 2018, MC1 filed motions to amend the Original Complaint and to dismiss Defendant Mountainview's counterclaims pursuant to Rule 12(b)(6). [Docs. 52, 54]. On August 6, 2019, this Court issued an Order granting MC1's motion for leave to amend the Original Complaint, denying MC1's motion to dismiss Defendant Mountainview's counterclaims as moot, and denying Defendant Elkins' motion to dismiss the claims against him in the Original Complaint as moot. [Doc. 61].

On August 12, 2019, MC1 filed an amended complaint (the "Amended Complaint"). [Doc. 62]. On September 3, 2019, Defendant Mountainview filed an answer to the Amended Complaint and counterclaims seeking cancellation of MC1's trademark registration. [Doc. 66]. On the same day, Defendant Elkins filed a motion to dismiss the claims in the Amended Complaint against him pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). [Doc. 64]. On October 1, 2019, MC1 filed a motion to dismiss Defendant Mountainview's counterclaims pursuant to Federal Rules of Civil Procedure Rule 9(b) and 12(b)(6). [Doc. 70].[2] The parties have responded and replied to those respective motions.

Having been fully briefed, this matter is ripe for disposition.

---

[2] While MC1's motion is entitled "Plaintiff's Motion to Dismiss *Defendants'* Counterclaims," [Doc. 70], Mountainview is the only defendant asserting any counterclaims against MC1.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), the pleadings "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be "plausible on [their] face," the claims must demonstrate more than "a sheer possibility that a defendant has acted unlawfully."  Id. at 678.

In considering the motions to dismiss, the Court accepts the allegations in non-moving party's pleadings as true and construes the allegations in the light most favorable to that party.    Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 190-92 (4th Cir. 2009).  The Court must accept the truthfulness of all factual allegations but is not required to assume the truth of "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Consumeraffairs.com, 591 F.3d at 255; see also Giacomelli, 588 F.3d at 189.  "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)."  Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012).

Determining whether the pleadings state a plausible claim for relief is "a context-specific task," Giacomelli, 588 F.3d at 193, which requires the Court to assess whether the factual allegations of the pleadings are sufficient "to raise the right to relief above the speculative level," Twombly, 550 U.S. at 555. As the Fourth Circuit has explained:

> To satisfy this standard, a [claimant] need not forecast evidence sufficient to prove the elements of the claim. However, the [counterclaims] must allege sufficient facts to establish those elements. Thus, while a [claimant] does not need to demonstrate in a complaint that the right to relief is probable, the complaint must advance the [claimant's] claim across the line from conceivable to plausible.

Walters, 684 F.3d at 439 (citations and internal quotation marks omitted).

## III. DISCUSSION

### A. Defendant Elkins' Motion to Dismiss

Taking the well-pleaded factual allegations of MC1's Amended Complaint as true, the following is a summary of the relevant facts.[3]

MC1 is a Connecticut limited liability company operating in Connecticut and New York. [Doc. 62 at ¶¶ 7, 9]. MC1 provides services for individuals with substance abuse issues. [Id. at ¶ 9]. Since its inception, MC1 has

---

[3] In reciting the relevant factual allegations, the Court has disregarded all "bare legal conclusions" asserted in the Amended Complaint, see Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011), as well as "[t]he mere recital of elements of a cause of action," see Walters, 684 F.3d at 439.

continuously used the MOUNTAINSIDE mark (the "Mark") in connection with its services. [Id. at ¶ 12]. On May 23, 2017, the United States Patent and Trademark Office ("PTO") issued Federal Registration Number 5208592 to MC1 for the Mark related to services provided for the rehabilitation of patients with drug addictions. [Id. at ¶ 15]. Registration 5208592 is currently valid, subsisting, in full force, and registered with the Principal Trademark Register of the PTO. [Id. at ¶ 16]. In addition to the Mark, MC1 also has used the following logo for decades:



[Id. at ¶ 18].

On April 10, 2018, Defendant Mountainview was formed as a North Carolina corporation operating under the name Mountainside Solutions, Inc. [Id. at ¶¶ 7, 22]. Defendant Mountainview provides services for individuals with substance abuse issues at a drug and alcohol addiction recovery facility. [Id. at ¶ 21]. Defendant Elkins is a 50% owner of Defendant Mountainview and serves as its President. [Id. at ¶ 8]. Under Defendant Elkins' direction, or with his ratification and participation, Defendant Mountainview intentionally selected the Mountainside Solutions, Inc. name to confuse consumers into believing that MC1 was affiliated with Defendant

Mountainview.  [Id. at ¶ 23].  On April 11, 2018, under Defendant Elkins'

direction, or with his ratification and participation, Defendant Mountainview

registered the domain name www.mountainsidesolutionsinc.com despite

knowing about MC1's name and the Mark and without having authorization

from MC1 to use MC1's name or the Mark.  [Id. at ¶ 24].  Defendant

Mountainview also created and used the following logo despite knowing

about MC1's name and the Mark and without having authorization from MC1

to use MC1's name or the Mark:



 [Id. at ¶ 25].  Under Defendant Elkins' direction, or with his ratification and

participation, Defendant Mountainview intentionally copied MC1's name,

trademark, and logo.  [Id. at ¶ 29].

MC1 had been using the Mark, its name, and the

www.mountainside.com domain name before Defendant Mountainview first

used its mark, its logo, or registered the www.mountainsidesolutionsinc.com

domain name.  [Id. at ¶ 28].  Under Defendant Elkins' direction, or with his

ratification and participation, Defendant Mountainview also actively

7

misrepresented that it was affiliated with MC1 by claiming that it was affiliated with the "Mountainside in Connecticut." [Id. at ¶ 27].

On July 2, 2018, MC1 sent a cease-and-desist letter to Defendant Mountainview regarding its intellectual property rights in the name, trademark, and logo being used by Defendant Mountainview. [Id. at ¶ 31]. Defendant Mountainview did not respond to MC1's letter. [Id. at ¶ 32].

On July 20, 2018, Defendant Mountainview filed a document, signed by Defendant Elkins, to amend its articles of incorporation to change its company name from "Mountainside Solutions, Inc." to "Mountainview Recovery, Inc." [Id. at ¶ 33]. Following the name change, Defendant Mountainview created and adopted a new logo:



 [Id. at ¶ 35]. Defendant Mountainview also stopped operating the website www.mountainsidesolutionsinc.com and began operating a website at www.mountainviewrecovery.com after the name change. [Id. at ¶ 34].

The Amended Complaint asserts six claims against Defendant Elkins including a claim for trademark infringement under 15 U.S.C. § 1114(1) ("Count One"); a claim for trademark infringement under 15 U.S.C. § 1125(a)

8

("Count Two"); a claim for cybersquatting/cyberpiracy under 15 U.S.C. § 1125(d) ("Count Three"); a claim for common law trademark infringement ("Count Four"); a claim for common law unfair competition ("Count Five"); and a claim for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 ("Count Six"). [Doc. 62 at 9-12].

Defendant Elkins moves to dismiss all the claims against him, arguing that the "few allegations . . . related to Elkins are insufficient to state a legally cognizable claim" and that "[v]irtually all of the allegations in the Complaint that even mention Elkins lump him in with the corporate defendant." [Doc. 65 at 1, 3].

### 1. Plaintiff's Law-of-the-Case Argument

MC1 first argues that Defendant Elkins is barred from bringing the present motion to dismiss because this Court already ruled on the sufficiency of MC1's allegations against Defendant Elkins when it granted MC1's motion to file an Amended Complaint in its August 6, 2019 Order. [Doc. 72 at 10-12]. Specifically, MC1 highlights that the August 6 Order stated that "'the [Plaintiff's] proposed amendment does not appear to be futile or made in bad faith.'" [Id. at 3 (citing Doc. 61 at 8)]. MC1 argues that by so finding, this Court "held that the amended complaint alleged sufficient facts showing Elkins' personal liability to survive dismissal." [Id. at 4].

9

At the outset, it is noted that in making this argument the Plaintiff is taking a position inconsistent with the position it took on the Motion to Amend. At that time, the Plaintiff argued that "the motion to amend should be granted because the Court is precluded from examining the merits unless it is absolutely clear that the amendment is frivolous (which it is not)." [Doc. 53 at 6]. The Plaintiff's prior argument was correct; the Plaintiff's current argument is not.

Courts may deny a motion to amend as futile where the amended complaint still would not survive a motion to dismiss and is therefore futile. See Frank M. McDermott, Ltd. v. Moretz, 898 F.2d 418, 420-21 (4th Cir. 1990) ("There is no error in disallowing an amendment when the claim sought to be pleaded by amendment plainly would be subject to a motion to dismiss under Fed. R. Civ. P. 12(b)(6))." The review for futility, however, "is not equivalent to an evaluation of the underlying merits of the case. To the contrary, '[u]nless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations . . . conjecture about the merits of the litigation should not enter into the decision whether to allow amendment.'" Next Generation Grp., LLC v. Sylvan Learning Ctrs., LLC, CCB-11-0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012) (quoting Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980)). As such, "[i]t is often

a better exercise of the court's discretion . . . and a conservation of judicial resources, to leave decisions on the merits with respect to motions to amend until the matter has been fully briefed in a motion to dismiss. DirecTV, Inc. v. Benson, 333 F. Supp. 2d 440, 444 (M.D.N.C. 2004) (citation omitted).

MC1 overstates the scope of the Court's August 6 Order by claiming that it prospectively ruled on the sufficiency of MC1's yet-to-be-filed Amended Complaint when it stated that the "proposed amendment does not appear to be futile or made in bad faith." [Doc. 72 at 3 (citing Doc. 61 at 9)]; Harless v. CSX Hotels, Inc., 389 F.3d 444, 447 (4th Cir. 2004) (stating that "[m]otions to amend are typically granted in the absence of an improper motive, such as undue delay, bad faith, or repeated failure to cure a deficiency by amendments previously allowed.") (citation omitted)). The lone sentence on which the Plaintiff's argument rests did not decide the merits of a yet-to-be-filed motion to dismiss by Defendant Elkins.

MC1 continues in this vein by arguing that the Court barred Defendant Elkins from filing any future motions to dismiss when it denied as moot his first motion to dismiss. [Doc. 72 at ¶ 4]. Specifically, MC1 argues that the Court only granted Defendant Mountainview leave to refile counterclaims, and never granted Defendant Elkins leave to refile his motion to dismiss. [Id.]. MC1's interpretation of the Court's Order is simply mistaken. The

decision to deny Defendant Elkins' original motion to dismiss as moot did not decide the merits of that motion or the sufficiency of MC1's allegations against Defendant Elkins. Instead, the Court denied Defendant Elkins' original motion to dismiss because it was responsive to the Original Complaint and "an amended pleading ordinarily supersedes the original and renders it of no legal effect." Lujan v. Chowan Univ., No. 2:17-CV-57-FL, 2018 WL 3763121, at *3 (E.D.N.C. Aug. 8, 2018) (quoting Young v. City of Mount Ranier, 238 F.3d 567, 573 (4th Cir. 2001)). Such a denial says nothing about the merits of Defendant Elkins' motion and does not preclude the Defendant Elkins from filing a new motion to dismiss in response to the Amended Complaint. For these reasons, the Plaintiff's arguments based on the law of the case are without merit.

### 2. Counts One, Two, and Four

Defendant Elkins moves to dismiss Counts One, Two, and Four, arguing that the "few allegations . . . related to Elkins are insufficient to state a legally cognizable claim" and that he should not be held liable for trademark infringement solely because of his role as a corporate officer. [Doc. 65 at 1, 3, 9].

"As a general rule, corporate officers are not held personally liable for infringement by their corporation when they are acting within the scope of

their duties." Specht v. Google, Inc., 660 F. Supp. 2d 858, 864 (N.D. Ill. 2009) (citations omitted). In trademark infringement and unfair trade practices cases, however, "[a] corporate official may be held personally liable for tortious conduct committed by him, though committed primarily for the benefit of the corporation." Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 149 (4th Cir. 1987). In such situations, a corporate official must have "actively and knowingly caused the infringement" to be liable. Chanel, Inc. v. Italian Activewear of Florida, Inc., 931 F.2d 1472, 1477 (11th Cir. 1991).

MC1's allegations against Defendant Elkins can be summarized into two categories. First, MC1 alleges that Defendant Elkins personally approved the name change from "Mountainside Solutions" to "Mountainview Recovery" by personally signing a document that amended Defendant Mountainview's articles of incorporation. [Doc. 62 at ¶ 33]. Further, by alleging that Defendant Elkins signed the amendment to the articles of incorporation after receiving the cease-and-desist letter, MC1 alleges that Defendant Elkins knew about the potential infringement on MC1's mark and nevertheless "actively and knowingly caused the infringement." Chanel, Inc. v. Italian Activewear of Florida, Inc., 931 F.2d 1472, 1477 (11th Cir. 1991).

Second, MC1 alleges, mostly upon information and belief, that Defendant Mountainview committed the infringing acts at Defendant Elkins'

direction, with Defendant Elkins' ratification or participation, or through Defendant Elkins' orchestration. [Id. at ¶ 1, 3, 5, 8, 23, 24, 27, 29, 38, 42]. To support that assertion, MC1 alleges that Defendant Elkins serves as Defendant Mountainview's President, is one of the controlling shareholders, and is one of few decisionmakers in Defendant Mountainview's small organization. [Doc. 66 at ¶ 8; Doc. 75 at 6]. As such, MC1 asserts that Defendant Elkins may have "actively and knowingly caused the infringement." Italian Activewear of Florida, Inc., 931 F.2d at 1477. While MC1's allegations are somewhat conclusory, MC1 has alleged enough supporting facts to make that conclusion plausible and thus has alleged enough to support trademark infringement claims against Defendant Elkins at the motion to dismiss stage. Accordingly, Defendant Elkins' motion to dismiss Counts One, Two, and Four will be denied.

### 3. Counts Five and Six[4]

Defendant Elkins moves to dismiss Counts Five and Six, arguing that MC1 only alleges the legal conclusion that the Defendants "'intentionally engaged with bad faith, and [are] continuing to engage in, acts of unfair

---

[4] While Defendant Elkins "moves to dismiss all claims in the Plaintiff's Complaint as against him[,]" he does not specifically argue that Count Six should be dismissed. [Doc. 64 at 1]. That may be an oversight since Defendant Elkins argues that MC1 failed to assert sufficient allegations as to "any of its five claims" against him, even though MC1 actually brought six claims against him. [Doc. 64-1 at 1]. As such, the Court will analyze Defendant Elkins' motion as though he also moves therein to dismiss Count Six.

competition by misappropriating the skills, expenditures, and labor of Mountainside, in violation of the common law.'" [Doc. 51 at 11 (quoting Doc. 62 at ¶ 63)].

"[T]he tests for North Carolina common law unfair competition and unfair and deceptive trade practices in the context of trademark are similar to that for trademark infringement." Passport Health, LLC v. Avance Health System, Inc., 2018 WL 6620914, at *6 (E.D.N.C. Dec. 18, 2018) (citation omitted); see also Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987) (stating that "[t]he tests for trademark infringement and unfair competition under the Lanham Act are essentially the same as that for common law unfair competition under North Carolina common law."). As such, the elements that a Plaintiff must plead to sufficiently allege a plausible claim for common law unfair competition and unfair and deceptive trade practices are "practically identical" to what a Plaintiff must plead to sufficiently allege a plausible claim for trademark infringement. Superior Performers, Inc. v. Family First Life, LLC, No. 1:14CV283, 2014 WL 7338923, at *7 (M.D.N.C. Dec. 22, 2014) (citing Microsoft Corp. v. Computer Service & Repair, Inc., 312 F.Supp.2d 779, 785 (4th Cir. 2004)); see also Mobile Tech Inc. v. InVue Sec. Prod. Inc., No. 318CV00052RJCDSC, 2019 WL 3001285,

at *3 (W.D.N.C. June 21, 2019), <u>report and recommendation adopted</u>, No. 318CV00052KDBDSC, 2019 WL 2992053 (W.D.N.C. July 9, 2019).

As discussed above, the allegations against Defendant Elkins are sufficient to support a plausible claim against him for trademark infringement. Therefore, the allegations against Defendant Elkins are also sufficient to support plausible claims for common law unfair competition and unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1. As such, Defendant Elkins' motion to dismiss Counts Five and Six will be denied.

### 4.    Count Three

Defendant Elkins next argues that MC1's claim for cybersquatting/cyberpiracy under 15 U.S.C. § 1125(d) must be dismissed because the Amended Complaint fails to sufficiently allege that he is the domain name registrant or that registrant's authorized licensee as required by 15 U.S.C. § 1125(d)(1)(D). [Doc. 65 at 12-13].

Under 15 U.S.C. § 1125(d), a person will be liable to the owner of a trademark if he "has a bad faith intent to profit from that mark . . . and registers, traffics in, or uses a domain name that . . . is identical or confusingly similar to that mark[.]" Section § 1125(d)(1)(D) of Title 15 further states that "[a] person shall be liable for using a domain name . . . only if that person is the domain name registrant or that registrant's authorized licensee."

16

The Amended Complaint alleges that "Mountainview's conduct, undertaken at Elkins' direction, ratification, or participation, constitutes cyber piracy in and affecting interstate commerce." [Doc. 62 at ¶ 55]. The Amended Complaint further alleges that the "Defendants have a bad faith intent to profit from *its* registration and use of the domain name." [Doc. 72 at 16 (emphasis added) (citing Doc. 62 at ¶ 54)]. Those allegations, however, do not mention who registered the domain name and do not allege that Defendant Elkins personally registered the domain name or that he is the authorized licensee of that registrant. Because the Amended Complaint fails to allege that Defendant Elkins was the domain name registrant or the registrant's authorized license as required by 15 U.S.C. § 1125(d)(1)(D), Defendant Elkins' motion to dismiss Count Three will be granted. See Putzmeister Am. Inc. v. United Equip. Sales Inc., No. C 11-05575 CRB, 2012 WL 2598270, at *2 (N.D. Cal. July 5, 2012) (dismissing a claim under 15 U.S.C. § 1125(d) that failed to allege that the defendant was the domain name registrant or that registrant's authorized licensee).

## B.    MC1's Motion to Dismiss Mountainview's Counterclaims[5]

As discussed above, MC1 has filed claims against Mountainview and Defendant Elkins for trademark infringement, cybersquatting, unfair competition, and unfair and deceptive trade practices related to the Mark. [Doc. 62].  Defendant Mountainview responds by asserting counterclaims against MC1, arguing that the Court should cancel MC1's registration of the Mark because MC1 committed fraud on the PTO when it registered the Mark by making false statements, MC1 later abandoned the Mark, and the Mark is a descriptive mark that lacks secondary meaning.  [Doc. 66 at ¶¶ 22-44]. MC1 moves to dismiss those counterclaims.  [Doc. 70].

MC1 is listed as the owner of United States Trademark Registration No. 5,208,592, issued on May 23, 2017 for the mark MOUNTAINSIDE (the "Mark") for "rehabilitation of drug addicted patients."  [Doc. 66 at ¶ 8]. On October 4, 2016, MC1 filed the trademark application with the PTO that matured into the registration for the Mark.  [Id. at ¶ 13].  Alongside that application, MC1 or its attorney filed sworn statements claiming that no other persons had the right to use the Mark in commerce.  [Id. at ¶ 16].  At the time

---

[5] In this section, the facts are presented in the light most favorable to Defendant Mountainview as the non-moving party.  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 190-92 (4th Cir. 2009).

of the filing, however, MC1 was aware that West Coast Recovery Center, LLC, a business providing identical services, used the Mark.  [Id. at ¶ 17, 29].  MC1 understood at the time that West Coast Recovery Center, LLC,'s rights in the Mark were superior to MC1's rights.  [Id. at ¶ 30].

The application filed by MC1 also claimed that it was currently using the Mark in commerce.  [Id. at ¶ 39].  To support that claim, MC1 filed a declaration signed by MC1's Managing Director, which stated that "the applicant is using the Mark in commerce or in connection with the goods/services in the application."  [Id. at ¶ 26].  Despite those claims, MC1 was not using the Mark in commerce at the time.  [Id. at ¶ 27].  MC1 made the false statements in its application knowingly with the intent to deceive the PTO, and, but for those false statements, MC1 would not have obtained the registration from the PTO.  [Id. at ¶¶ 18-19].

MC1 has failed to police the Mark against third parties.  [Doc. 66 at ¶ 36].  As a result, third parties are using confusingly similar trademarks for related services.  [Id.].  Moreover, MC1 has not used the Mark in commerce and does not intend to do so in the future.  [Id. at ¶¶ 37-38].

### 1.    Fraud on the PTO

Defendant Mountainview's first counterclaim asserts that MC1 committed fraud on the PTO when it registered the Mark.  [Doc. 66 at ¶¶ 22-

34]. MC1 moves to dismiss this claim, arguing that the Defendant Mountainview's counterclaim fails to "meet the stringent pleading requirements [for fraud] under Rule 9(b)." [Doc. 71 at 6].

Under 15 U.S.C. § 1119, "[i]n any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." As such, "[a] defendant in a trademark infringement case may counterclaim for cancellation of [plaintiff's] registration." Sweetwater Brewing Co., LLC v. Great American Restaurants, Inc., 266 F.Supp.2d 457, 465 (E.D.Va.2003) (citation and quotations omitted).

To survive a motion to dismiss a claim asserting fraud against the PTO, a plaintiff

> must allege particular facts which, if proven, would establish that: (1) there was in fact another use of the same or a confusingly similar mark at the time the oath was signed; (2) the other user had legal rights superior to the applicant's; (3) applicant knew that the other user had rights in the mark superior to applicant's, and either believed that a likelihood of confusion would result from applicant's use of its mark or had no reasonable basis for believing otherwise; and (4) applicant, in failing to disclose these facts to the Patent and Trademark Office, intended to procure a registration to which it was not entitled.

Hana Fin, Inc. v. Hana Bank, 500 F. Supp. 2d 1228, 1234 (C.D. Cal. 2007) (citing Intellimedia Sports Inc. v. Intellimedia Corp., 43 U.S.P.Q.2d 1203, 1206 (T.T.A.B. 1997)). "Because the trademark application oath is 'phrased in terms of a subjective belief,' it is 'extremely difficult to prove fraud so long as the signer has an honestly held, good faith belief' that it is the senior right holder." Id. (quoting Woodstock's Enters. Inc. (Cal.) v. Woodstock's Enters. Inc. (Or.), 43 U.S.P.Q.2d 1440, 1444 (T.T.A.B. 1997)).

Claims asserting fraud against the PTO are subject to Rule 9(b), which requires the claimant to "plead with particularity the time place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Fed. R. Civ. P 9(b); see also Ameasia Co. v. Golden Vill. Trading, Inc., No. 08-CV-2495 (KAM), 2009 WL 10706737, at *3 (E.D.N.Y. July 27, 2009). A claim for fraud against the PTO "must consist of more than a mere conclusory allegation that the defendant 'knew' about a third party's superior rights in the mark." Intellimedia Sports Inc., 43 U.S.P.Q.2d at 1207. "The plaintiff must plead particular facts which, if proven, would establish that, as of the application filing date, the defendant believed that the third party had superior or clearly established rights and that a likelihood of confusion would result from applicant's use of its mark." Id.

According to MC1, Defendant Mountainview's counterclaim fails to sufficiently allege that MC1 believed that West Coast Recovery Center, LLC had superior rights to the Mark when the application was filed. [Doc. 71 at 14]. Likewise, MC1 argues that Defendant Mountainview fails to "name the specific individual associated with the filing or prosecution" of the trademark application who "both knew of the material information and deliberately withheld or misrepresented it." [Id.].

Defendant Mountainview's allegations are not so bare bones as Plaintiff argues. They are not merely conclusory. Defendant Mountainview alleges that a specifically named third party (West Coast Recovery Center, LLC) had superior rights by its use of an identical (not merely confusing) mark, and that such use was in connection with the provision of services identical to those provided by the Plaintiff. Such specificity and similarity of area of use of the Mark gives rise to the reasonable inference that the Plaintiff, through its officers and/or attorneys, knew of West Coast Recovery Center LLC's mark and believed its rights to be superior. [Doc. 66 at 18, 12]. As such, MC1's first argument regarding this counterclaim is without merit.

MC1 also argues that Defendant Mountainview's counterclaim fails to allege sufficient facts to present a plausible claim against MC1 for fraud on the PTO because it fails to "name the specific individual associated with the

filing or prosecution" of the trademark application who "both knew of the material information and deliberately withheld or misrepresented it." [Doc. 71 at 14]. Defendant Mountainview's counterclaim, however, alleges that MC1's Managing Director filed a sworn declaration with the application falsely claiming that "the applicant is using the Mark in commerce or in connection with the goods/services in the application." [Doc. 66 at ¶¶ 26, 27]. Defendant Mountainview's counterclaim further alleges that MC1 "and/or its attorney" filed sworn statements with the application that falsely claimed that MC1 was currently using that Mark in commerce and that no other persons had the right to use the Mark in commerce. [Id. at ¶ 25-29].[6] Those allegations are sufficient under Rule 9(b). Ameasia Co., 2009 WL 10706737, at *3; see also Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1329 (Fed. Cir. 2009) (addressing the Rule 9(b) standard in the context of fraud on the PTO related to a patent application). As such, Defendant Mountainview alleges sufficient facts to present a plausible claim against MC1 for committing fraud on the PTO. Therefore, MC1's motion to dismiss

---

[6] While the Federal Circuit has opinedthat allegations made solely against a "[Plaintiff], its agents and/or attorneys," may be insufficient under Rule 9(b), Exergen, 575 F.3d at 1329, Defendant Mountainview also makes specific allegations regarding false statements made by MC1's Managing Director. [Doc. 66 at ¶ 26]. As such, the fact that some of Defendant Mountainview's allegations are cast against MC1 and/or its attorney does not necessitate dismissal under Rule 9(b).

23

Defendant Mountainview's first counterclaim for trademark cancellation for fraud on the PTO will be denied.

### 2. Abandonment

Defendant Mountainview also asserts a second counterclaim on the basis that MC1 has abandoned the Mark. [Doc. 66 at ¶¶ 35-40]. MC1 moves to dismiss this claim as well, arguing that Defendant Mountainview "fails to sufficiently plead abandonment." [Doc. 71 at 16].

Under 15 U.S.C. § 1227, "[a] mark shall be deemed to be "abandoned" if . . . its use has been discontinued with intent not to resume such use . . . [or] [w]hen any course of conduct of the owner . . . causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark." "Acts of omission" causing a mark to lose its significance as an indication of origin have been held to include failing to take action against infringers." Sweetheart Plastics, Inc. v. Detroit Forming, Inc., 743 F.2d 1039, 1047 (4th Cir. 1984) (citing Wallpaper Mfgs. Ltd. v. Crown Wallcovering Corp., 680 F.2d 755, 766 (CCPA 1982)).

To show intentional abandonment, the Fourth Circuit "requires a showing of: (1) non-use by the legal owner; and (2) no intent to resume use in the reasonably foreseeable future by the legal owner." George & Co. LLC

v. Imagination Entm't Ltd., 575 F.3d 383, 401 (4th Cir. 2009) (citing Emergency One, Inc. v. American FireEagle, Ltd., 228 F.3d 531, 535 (4th Cir. 2000)). "Three consecutive years of non-use creates a presumption that the legal owner intended not to resume use." Id. (citing 15 U.S.C. § 1127). In this Circuit, '[c]ourts have consistently held that trademark nonuse must be intentional to constitute abandonment." Lone Star Steakhouse & Saloon, Inc. v. Alpha of VA., Inc., 43 F.3d 922, 931 (4th Cir. 1995).

Here, Defendant Mountainview alleges that MC1 "has not, at any time used and currently does not use, the [M]ark . . . in commerce" and has "no intent" to do so in the future. [Doc. 66 at ¶ 37, 38]. Moreover, Defendant Mountainview alleges that MC1 has not used the Mark in commerce since it filed the application registering it over three years ago. [Id. at ¶ 13]. As such, Defendant Mountainview alleges that MC1 has not used the Mark for more than three years and has no intent to do so in the reasonably foreseeable future. See George, 575 F.3d at 401. While Defendant Mountainview's allegations are somewhat conclusory, they set forth specific facts as to what has occurred (or not occurred) in the past and as to the state of mind of MC1's management. Accordingly, they are sufficient to plausibly claim that MC1 has abandoned the Mark at the motion to dismiss stage. Therefore,

MC1's motion to dismiss Defendant Mountainview's counterclaim for trademark cancellation for abandonment will be denied.

### 3. Lack of Secondary Meaning

Defendant Mountainview also brings a third counterclaim, asserting that the Mark does not warrant trademark protection because it is a descriptive Mark that has failed to acquire secondary meaning. [Doc. 66 at ¶¶ 41-44]. MC1 moves to dismiss this claim, arguing that the Mark is actually suggestive, rather than descriptive, based on the fact that it was registered with the PTO and that, even if the Mark is descriptive, Defendant Mountainview "cannot show a lack of secondary meaning." [Doc. 71 at 22].

"The protection accorded trademarks is directly related to the mark's distinctiveness." Sara Lee Corp. v. Kayser–Roth Corp., 81 F.3d 455, 464 (4th Cir. 1996). As such, a court reviewing the protection to be afforded a trademark "must determine whether it is 1) generic, 2) descriptive, 3) suggestive or 4) arbitrary or fanciful." U.S. Search, LLC v. U.S. Search.com Inc., 300 F.3d 517, 523 (4th Cir. 2002) (citing Perini Corp. v. Perini Construction, Inc., 915 F.2d 121, 124 (4th Cir. 1990)). At issue here are suggestive and descriptive trademarks.

"[S]uggestive marks (words that connote, rather than describe, some quality or characteristic of a product or service) are inherently distinctive, and

thus receive the greatest protection against infringement." Id. at 523 (citing Sara Lee, 81 F.3d at 464). The PTO's "decision to register a mark, without requiring evidence of secondary meaning, [is] 'powerful evidence that registered mark is suggestive and not merely descriptive.'" Am. Online, Inc. v. AT&T Corp., 243 F.3d 812, 817 (4th Cir. 2001) (quoting RFE Indus., Inc. v. SPM Corp., 105 F.3d 923, 926 (4th Cir. 1997) (emphasis removed)). A registration, however, is "'only *prima facie* evidence that the mark is suggestive,' and, for that reason, 'may be rebutted.'" Id. (quoting Petro Stopping Ctrs. L.P. v. James River Petroleum Inc., 130 F.3d 88, 93 (4th Cir. 1997)).

Descriptive marks on the other hand generally "describe a function, use, characteristic, size, or intended purpose." Retail Servs., Inc. v. Freebies Publ's, 364 F.3d 535, 539 (4th Cir. 2004). "A descriptive mark may be eligible for protection, but only if it has acquired a "secondary meaning" in the minds of the public. U.S. Search, LLC, 300 F.3d at 523 (citing Sara Lee, 81 F.3d at 464). A mark acquires secondary meaning "when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself.'" Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 211 (2000).

"Proof of secondary meaning entails vigorous evidentiary requirements, and thus secondary meaning is factual in nature and typically ill-suited for a motion to dismiss." Camco Mfg., Inc. v. Jones Stephens Corp., 391 F. Supp. 3d 515, 522 (M.D.N.C. 2019) (citation and quotations omitted); see also Stat Ltd. v. Beard Head, Inc., 60 F. Supp. 3d 634, 638 (E.D. Va. 2014) (stating that extensive factual allegations regarding secondary meaning are generally not required in pleadings because such claims require "an inherently factual review rarely resolved at the motion to dismiss stage."). As such, courts generally deny motions to dismiss claims for lack of secondary meaning. Id.; see also U.S. Search, LLC, 300 F.3d at 525 (stating that "the existence of secondary meaning is generally a question for the trier of fact."); Rothy's, Inc. v. JKM Techs., LLC, 360 F. Supp. 3d 373, 388 (W.D. Va. 2018) (stating that because of "the factually intensive nature of secondary meaning, it is not appropriate for the court to weigh the factors at [the motion to dismiss] stage."); Mud Pie, LLC v. Belk, Inc., No. 318CV00607RJCDCK, 2019 WL 3268823, at *4 (W.D.N.C. July 18, 2019) (Conrad, J.).

Here, the Mark was registered by MC1. Typically, that registration serves as *prima facie* evidence that the Mark is suggestive. Defendant Mountainview, however, has plausibly asserts a claim that would negate

28

such registration, and thus eliminate any presumption of suggestiveness. [Doc. 66 at ¶¶ 17, 31, 39, 42-43; Doc. 76 at 14]. While MC1 may rebut Defendant Mountainview's fraud claim at trial and thereby show the presumptive validity of the Mark, Defendant Mountainview has presented sufficient allegations at this early stage to plausibly claim that the Mark may not be suggestive notwithstanding its registration with the PTO.

Defendant Mountainview further claims that the Mark also cannot be protected as a descriptive mark because it has failed to acquire secondary meaning. [Doc. 66 at ¶¶ 41-42]. In support of that claim, Defendant Mountainview alleges that the Mark "has not become distinctive of the goods and services offered pursuant to that mark." [Doc. 66 at ¶ 42]. Those allegations are somewhat conclusory, but courts generally allow secondary meaning claims with similar allegations to proceed past the motion to dismiss stage, reserving more rigorous factual review for summary judgment due to the factually intensive issues presented by such claims. Camco Mfg., 391 F. Supp. 3d at 522 (citation and quotations omitted). see also U.S. Search, LLC, 300 F.3d at 525; Rothy's, Inc., 360 F. Supp. 3d at 388; Mud Pie, LLC, 2019 WL 3268823, at *4. As such, Defendant Mountainview has alleged sufficient facts here to support a plausible claim that the Mark lacks secondary meaning. Accordingly, MC1's motion to dismiss Defendant

Mountainview's third counterclaim for trademark cancellation for lack of secondary meaning will be denied.

### ORDER

**IT IS, THEREFORE, ORDERED** that Defendant Elkins' Motion to Dismiss for Failure to State a Claim [Doc. 64] is **GRANTED IN PART** and **DENIED IN PART**.  Specifically, the Motion is **GRANTED** with respect to Count Three of MC1's Complaint and **DENIED** with respect to Counts One, Two, Four, Five, and Six of MC1's Complaint.

**IT IS FURTHER ORDERED** that MC1's Motion to Dismiss Defendant Mountainview's counterclaims [Doc. 70] is **DENIED**.

**IT IS SO ORDERED.**

Signed: April 21, 2020

Martin Reidinger
United States District Judge